

The following constitutes
the order of the court. Signed July 14, 2014

_____
Stephen L. Johnson
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>RICHARD STEVEN LOUIE and<br>STEPHANIE YINMAN CHAN,<br><br>Debtors. | Case No. 11-54357 SLJ<br><br>Ch. 7 |
| CAROL WU, trustee,<br><br>Plaintiff,<br><br>v.<br><br>TRUE TRADITIONS, L.C.,<br><br>Defendant. | A.P. No. 13-5062 SLJ |
| LINDA S. GREEN, trustee,<br><br>Cross-Plaintiff,<br><br>v.<br><br>TRUE TRADITIONS, L.C., CAROL WU, trustee.<br><br>Cross-Defendants. | |

ORDER FOLLOWING TRIAL

-1-

# ORDER FOLLOWING TRIAL

The chapter 7 trustees of two different bankruptcy estates each brought a lawsuit to recover ownership of real property located at 415-417 Tehama Street, San Francisco, California ("Tehama Property"), which they contend belongs in one of the chapter 7 estates they were administering.[1] The trustees alleged the transfers were recoverable as intentional and constructive fraudulent conveyances, that title to the Tehama Property should be restored to the estates through declaratory relief, and other causes of action. The trustees later entered into a settlement between the two bankruptcy estates which called for Linda Green, the trustee in Homer Ventures, LLC, case no. 12-12238, to prosecute the lawsuit, and to split any recovery with Carol Wu, the trustee in the case of Richard Louie and Stephanie Chan, case no. 11-54357. That agreement was approved by the judges assigned to those cases.[2]

The court conducted a bench trial in this proceeding on June 9 and 10, 2014. Witnesses included Jay Crom, CPA, M. Patricia Fisher, handwriting expert, S.O. Kish, notary public (through deposition transcript), William Higgins, Esq., and Howard Grobstein, chapter 7 trustee. Ms. Green was represented by Jean Barnier, Esq. and John MacConaghy, Esq., and defendant True Traditions, L.C., was represented by John Shepardson, Esq. For the reasons stated below, the court will enter judgment for plaintiff Green.

## I. FACTUAL BACKGROUND[3]

### A. The Parties

Richard Louie, Sr. and Mary Louie are the parents of Richard Louie, also known as Rick Louie. Stephanie Chan is Rick Louie's spouse. Richard Louie, Sr. died in October 2003.

---

[1] *See* Order Following Trial in Adversary Proceeding Contesting Debtors' Right to Discharge under 11 U.S.C. § 727(a), AP No. 11-5217, entered March 21, 2013.

[2] The agreement between the trustees was approved by an Order Approving Compromise in case no. 11-54357, docketed September 19, 2013 (Judge Johnson), and by the Order Authorizing Compromise of Controversy and Sale of Real Property Interest, in case 12-12238, docketed September 18, 2013 (Judge Jaroslovsky).

[3] This memorandum constitutes the court's findings of fact and conclusions of law under FED. R. BANKR. P. 7052(a).

ORDER FOLLOWING TRIAL
-2-

Defendant True Traditions, L.C., is a New Mexico limited liability company. According to its operating agreement, Mary Louie is its sole member. The Certificate of Organization was filed on January 22, 2014.

B. The Sav-More and Buffalo Properties Transactions

In 2003, Richard and Mary Louie sold a grocery store they operated in Williams, California ("Sav-Mor Grocery") for $280,000, and purchased two properties located at 965 Amherst Street and 241 West Utica Street, Buffalo, New York (the "Buffalo Properties"). The sale was meant to be accomplished through a 1031 tax free exchange (also called a Starker exchange), the effect of which would have deferred Richard and Mary Louie's gain on the sale of the Sav-Mor Grocery sale until the Buffalo Properties were sold. Title to both Buffalo Properties was taken in the names of Richard Louie, Sr., Mary Louie, Rick Louie, and Stephanie Chan.

On June 15, 2003, shortly before the sale of the Buffalo Properties closed, Richard and Mary Louie, executed grant deeds transferring ownership of the Buffalo Properties to Rick Louie and Stephanie Chan solely.[4] Those deeds were not recorded until June 11, 2007.[5] Thus, by 2007 at the latest, Mary Louie appears to have relinquished her interest in the Buffalo Properties. Her husband, Richard Louie, Sr., was dead by this point.

The parties purported to execute a Partnership Agreement, dated February 27, 2003, in connection with the purchase of the Buffalo Properties. Summarized, it provided that Richard

---

[4] The court notes that the grant deeds were signed before the parties actually took title to the Buffalo Properties. As noted below, the grant deeds were recorded in 2007, suggesting the parties intended from the start that Rick Louie and Stephanie Chan own the property.

[5] For unexplained reasons, on May 12, 2004, the four owners (Richard and Mary Louie, Rick Louie, and Stephanie Chan) executed a conflicting deed which transferred the Buffalo Properties to Flanders Ventures, LLC. Flanders Ventures was another of Rick Louie's limited liability companies. Defendant did not argue that Flanders Ventures had any sort of interest in the Buffalo Properties so the court will just ignore this transaction for the purpose of this memorandum. Ms. Fisher, the handwriting expert, concluded the deed was a forgery. The short version is that nothing ever came of the deed. The court regards this fraudulent deed as a nullity.

ORDER FOLLOWING TRIAL
-3-

and Mary Louie would be repaid their investment in the Buffalo Properties, and the four owners would divide further funds generated by the Buffalo Properties, after paying Rick Louie a management fee of 6%. The document is very brief, and does not contain many of the usual terms one would associate with such an agreement. It omits to say how the property will be held and how the profits will be calculated. It does not contain any rules for management of the property, for dealing with partnership votes, withdrawal, or liability. And, according to Plaintiff's expert witness M. Patricia Fisher, the Partnership Agreement—or, at least Mary Louie's signature on that agreement—was a forgery. Given the incompleteness of the document and Fisher's testimony, the court concludes the Partnership Agreement is not authentic and disregards it.

Whatever the chain of title on the Buffalo Properties, the next steps were conducted solely by Rick Louie and Stephanie Chan. On July 17, 2007, the two Buffalo Properties were sold by Rick Louie and Stephanie Chan to a third party for $690,000. Flanders Ventures is not mentioned in this conveyance, by which the court infers its interest was terminated. Thus, it was Rick Louie and Stephanie Chan who executed the Warranty Deed to convey the Buffalo Properties to the new buyer. The buyer paid for the properties by assuming $473,541.64 in existing debt, executing a new promissory note for $146,458.76, plus the assumption of $70,000 in liabilities. Later, the buyer refinanced the properties, and paid off the loans on the properties. The buyer sent a check for $190,751, made payable to Rick Louie, who deposited those funds in an account with Merrill Lynch described below.

C. The Merrill Lynch Account

The Merrill Lynch account, with account number ending in 0343 ("Merrill Lynch Account") was titled in the names of Rick Louie and his mother, Mary. The court finds that Rick Louie exercised substantial control over the Merrill Lynch Account. On August 26, 2009, he deposited a tax refund that he and Stephanie Chan received of $42,722.20 directly into the Merrill Lynch Account. Commencing in 2011, Rick Louie and Stephanie Chan deposited $15,000 per month into the Merrill Lynch Account. He and Stephanie Chan wrote numerous checks on the Merrill Lynch Account for personal or family expenses. When they filed their

ORDER FOLLOWING TRIAL

-4-

individual chapter 7 case in 2011, Rick Louie and Stephanie Chan did not disclose the Merrill Lynch Account on the bankruptcy schedules. However, shortly before the 2013 trial on the complaint objecting to the entry of a discharge for Rick Louie and Stephanie Chan, they filed an amended Schedule B disclosing the Merrill Lynch Account.[6] Mary's involvement with the Merrill Lynch Account appears to have been minimal; she received small sums of approximately $1,200 per month from this Merrill Lynch Account by way of checks written by Rick Louie.[7]

### D. The 580 Parkson Road Deficiency Judgment

In October, 2007, Rick Louie and Stephanie Chan purchased an investment property at 580 Parkson Road, Henderson, Nevada ("Parkson Property") through a limited liability company called Waiyan Ventures, which borrowed $2,650,000 to complete this purchase. In April 2009, Waiyan Ventures defaulted on that loan and the lender commenced foreclosure proceedings. The deed of trust was foreclosed and the property sold on January 15, 2010. On January 19, 2010, the lender sued Rick Louie and Stephanie Chan for a deficiency on the sale of the property. Ultimately, the lender obtained a judgment against Rick Louie and Stephanie Chan for $1,725,489.19.

### E. The Tehama Note, Foreclosure, and Ownership of the Tehama Property

On October 1, 2009, with the foreclosure on the 580 Parkson Property in progress, Rick Louie negotiated the purchase of a promissory note secured by a lien on the Tehama Property. According to the Loan Sale Agreement, dated October 1, 2009, Rick Louie designated an entity called Homer Ventures, LLC, to complete the purchase of this note. Homer Ventures, LLC paid $113,780.85 to purchase the promissory note from an entity called True Traditions, Inc.

---

[6] The disclosure was accompanied by a notation "Power of Atny." In her declaration, Ms. Fisher states that the signature of Mary Louie on the Power of Attorney was a forgery. The Notary, S.O. Kish, whose notary stamp appeared on the document, testified that he did not notarize the document. Thus, the court gives no weight to the Power of Attorney.

[7] *See* Order Following Trial in Adversary Proceeding Contesting Debtors' Right to Discharge under 11 U.S.C. § 727(a), pp. 14-15, AP No. 11-5217, entered March 21, 2013.

ORDER FOLLOWING TRIAL
-5-

That promissory note was secured by a lien in second position on the Tehama Property. The money for that purchase came from the Merrill Lynch Account, as evidenced by the check dated October 19, 2009, and the account statement for October 2009. No record was introduced in evidence to show how Homer Ventures, LLC, came to be entitled to spend $113,780.85 from the Merrill Lynch Account. In other words, there was no documentation to show whether Homer Ventures, LLC borrowed the money from Rick Louie and his mother Mary, whether it intended to repay that money, or whether it was some sort of investment by Rick Louie and his mother Mary.

Homer Ventures, LLC, is itself an enigmatic entity. According to the record, Homer Ventures, LLC came into being on September 25, 2003. The members were Rick Louie and Stephanie Chan. On August 8, 2008, the membership agreement was amended to provide that Mary Louie would be a 50% member of Homer Ventures, LLC.

Eventually, it was time to foreclose on the Tehama Property. In another transaction with opaque documentation, the foreclosure appears to have been initiated by Homer Ventures, LLC. At the last minute, Homer Ventures, LLC assigned its deed of trust on the property to Mary Louie. So, when the foreclosure took place on July 19, 2010, Mary Louie was placed on title to the property rather than Homer Ventures, LLC.

On January 19, 2013, after the court had conducted a trial in the case described in footnote 1, Mary Louie transferred her interest in the Tehama Property to True Traditions, L.C. for no consideration, by means of a grant deed, which was later recorded. At the point the grant deed was executed, True Traditions, L.C., which purported to be a New Mexico limited liability company, had not yet been organized under New Mexico law.

F.  Witnesses at Trial

Plaintiff produced two witnesses at trial, Jay Crom, an expert on accounting and insolvency issues, and M. Patricia Fisher, a handwriting expert. Their admission as experts and the reports they prepared for trial were admitted. *See* Exhibit 1 ("Crom Report") and Exhibit 2 ("Fisher Report").

1    Mr. Crom's testified credibly about Rick Louie's financial empire and certain important
2    transactions.  Among other things, Mr. Crom concluded that the money used to purchase the
3    Tehama Note could not be traced to the sale of Richard and Mary Louie's property in Maxwell,
4    California, that Rick Louie made numerous false and conflicting statements regarding his
5    finances, including repeatedly asserting that notes or deeds of trust were supported by loans his
6    parents made to him for his college education.  Mr. Crom's report is helpful in laying out a
7    factual background for the case, but many of his conclusions are factual in nature, and those
8    conclusions are the court's province.

Ms. Fisher testified credibly about 28 signatures on documents purported to be those of Mary Louie.  Her thorough report indicates that the vast majority of those signatures were not the signature of Mary Louie, but facsimilies or copies of her signatures.  As appropriate, those signatures that she identified as being fraudulent are discussed below.

Submitted as Exhibit 3 was the deposition testimony of S.O. Kish, a 93 year old notary public.  This testimony was admitted without objection.  Mr. Kish is identified as having acknowledged the signatures on many documents at issue in this case.  He stated that he does not recall acknowledging those signatures and his notary book supports his recollection.

Defendant produced two witnesses.  William Higgins is a lawyer admitted in New York, who represented Rick Louie and his family in the acquisition of the Buffalo Properties.  He was able to identify and explain certain of the documents involved in that sale.

Howard Grobstein is a chapter 7 trustee in Southern California.  His report was admitted as Exhibit B.  Mr. Grobstein evaluated the documents in this case to determine whether the proceeds from the sale of the Sav-Mor store could be traced to the purchase of the Tehama Note.  The court credits this testimony but concludes Mr. Grobstein was wrong.

## II.    LEGAL AUTHORITIES

### A.    Burden of Proof

The trustee has the burden of proving the elements of a fraudulent conveyance by a preponderance of the evidence under the Bankruptcy Code and California law.  *In re Huber*, 493 B.R. 798, 811 (Bankr. W.D.Wash. 2013); *In re Serrato*, 214 B.R 219, 229 (Bankr. N.D.Cal.

ORDER FOLLOWING TRIAL

1997). Once a trustee establishes indicia of fraud in an action under § 548(a)(1), the burden shifts to the transferee to prove some "legitimate supervening purpose" for the transfers at issue. *In re Acequia, Inc.,* 34 F.3d 800, 806 (9th Cir. 1994).

B. Tracing Under the Bankruptcy Code

One of the disputes the court must resolve in this case is whether Mary Louie's money from the sale of the Sav-Mor store was used to purchase the Tehama Note. Defendant contends that the money for that purchase can be traced to the Sav-Mor transaction.

Plaintiff refers the court to settled law in the Ninth Circuit holding that if a person seeks to establish ownership of property that is within the control of bankruptcy estate through a tracing of funds theory, they must overcome a presumption that money in a debtor's account is not estate property. *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1217 (9th Cir. 1988). This principle of strict tracing also applies when a party claims that estate property is subject to a constructive trust. *Taylor Assoc. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 296 (9th Cir. 1997).

C. Elements of Actual Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(A) and California Civil Code § 3439.04

Plaintiff seeks to avoid the transfer of funds from the Merrill Lynch Account into the purchase of the Tehama Note and, later, the placing of Defendant's name on the title to that property. She contends the transfer was made by either Homer Ventures or Rick Louie with the actual intent to hinder. To prevail on a § 548(a)(1)(A) claim, a trustee must prove the following: (1) a transfer; (2) of an interest of the debtor in property; (3) within two years before the petition was filed; and (4) with the actual intent to hinder, delay or defraud the Debtors' creditors. *In re GGW Brands, LLC*, 504 B.R. 577, 606 (Bankr. C.D.Cal. 2019); *In re Brobeck, Phleger & Harrison LL*, 408 B.R. 318, 339 (Bankr. N.D.Cal. 2009).

Section 544 of the Bankruptcy Code also allows a bankruptcy trustee to avoid any transfer of a debtor's property that would be avoidable by an unsecured creditor under applicable state law. 11 U.S.C. § 544(b). Under California law, a transfer is fraudulent "as to a creditor, whether the creditor's claim arose before or after the transfer was made or the

ORDER FOLLOWING TRIAL

-8-

obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal.Civ.Code § 3439.04(a)(1). Instead of the two-year period in § 548(a)(1), California law has a four-year "reach-back" period. Cal.Civ.Code § 3439.09(a).

Because a debtor will rarely admit to transferring property with an actual intent to defraud creditors, both California and the Ninth Circuit adopted a list of factors, or "badges of fraud," indicative of actual intent to defraud. Cal.Civ.Code § 3439.04(b); *Acequia,* 34 F.3d at 806 ("[C]ourts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud."). Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.[8] *Id.*, at 806.

Under California law, the badges of fraud from which an inference of fraudulent intent may be drawn include:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

---

[8] Federal common law does not have a definitive list of badges of fraud. 5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b][i], fn 16. Collier lists the following badges of fraud: (1) the lack or inadequacy of consideration; (2) close relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events under inquiry. 5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b][i].

ORDER FOLLOWING TRIAL

-9-

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer had occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal.Civ.Code § 3439.04(b).

D.  Elements of a Constructive Fraudulent Conveyance 11 U.S.C. § 548(a)(1)(B) and California Civil Code § 3439.05

The elements of a constructive fraudulent conveyance under § 548(a)(1)(B) are: (1) a transfer; (2) of an interest of the debtor in property; (3) within two years of the bankruptcy filing; (4) without receiving reasonably equivalent value; and (5) the debtor was insolvent at the time of the transfer or the debtor became insolvent as a result of the transfer. *In re Pringle*, 495 B.R. 447, 462-63 (B.A.P. 9th Cir. 2013).

Similarly, § 3439.05 of the California Civil Code provides, "A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer...." With the exception of the four-year "reach-back" period under California law, "California's fraudulent transfer statutes are similar in form and substance to the Bankruptcy

Code's fraudulent transfer provisions." *In re AFI Holding, Inc.,* 525 F.3d 700, 703 (9th Cir. 2008).

Constructive fraudulent transfers do not require proof of actual intent. "[T]he transferor's intent is immaterial to the constructively fraudulent transfer in which the issue is the equivalence of the consideration coupled with either insolvency, or inadequacy of remaining capital, or inability to pay debts as they mature." *In re Cohen*, 199 B.R. 709, 717 (B.A.P. 9th Cir. 1996).

E. <u>Undisputed Elements</u>

Certain facts and legal elements were established by summary adjudication, as detailed in the court's Order on Motion and Counter-Motion for Summary Judgment, entered on May 14, 2014. They are:

- On or about October 19, 2009, either Rick Louie or Mary Louie … transferred $113,780.85 from the Merrill Lynch Account for the direct benefit of the Debtor Homer Ventures to acquire to a promissory note made by an unaffiliated entity known as True Traditions, Inc., secured by a second deed of trust on the Tehama Property.
- Debtor Rick Louie was insolvent, or became insolvent, as a result of this transfer.
- Debtor Rick Louie failed to receive a reasonably equivalent value in exchange for this transfer.
- There exists an actual creditor who held the right under the California Uniform Fraudulent Transfer Act to avoid this transfer as of the date Rick Louie filed his petition for relief.
- On January 28, 2013, Mary Louie transferred the Tehama Property to Defendant True Traditions, L.C.
- Defendant True Traditions L.C. is not a "good faith transferee" as the term is used in 11 U.S.C. § 550(b).

## III. DISCUSSION

### A. The Money to Purchase the Tehama Note came from Estate Property

The money to purchase the Tehama Note came from the Merrill Lynch Account. Rick Louie was on the signature card for the Merrill Lynch Account. Although Rick Louie and Stephanie Chan did not disclose the Merrill Lynch Account in their original schedules, they disclosed the Merrill Lynch Account in an Amended Schedule B, filed on December 6, 2012. The amended schedules came too late to save Rick Louie from losing his discharge but can constitute an admission under Fed.R.Evid. 801(d)(2).

Because the court determines that Rick Louie had an interest in the Merrill Lynch Account, and it is undisputed that funds from the Merrill Lynch Account were used to purchase the note on the Tehama Property, Plaintiff has carried her burden showing that Rick Louie had an interest in the Tehama Property. The burden shifts to Defendant to prove tracing. In other words, Defendant must show conclusively that the money in the account belonged to Mary Louie.

Defendant contends that most of the money in the Merrill Lynch Account belonged to Mary Louie and she should therefore own the Tehama Property. Defendant argues that Rick Louie's parents sold the Sav-Mor store in 1993, commencing a long series of investments. The money from the sale of the Sav-Mor store was used as a down payment on the Buffalo Properties. The proceeds from the sale of the Buffalo Properties ($190,751) were deposited in the Merrill Lynch Account. The money from that Merrill Lynch Account was used by Homer Ventures to purchase the Tehama Note. Because Mary Louie was a 50% owner of Homer Ventures, LLC, and because the money Homer Ventures, LLC used to purchase the Tehama Note came from Mary Louie's Merrill Lynch Account, Mary took title to the Tehama Property. In this view, title to the Tehama Property is within Mary Louie's control because it was the sale of her store, the Sav-Mor store, that set this chain of events in action.

The court does not accept this argument because it is inconsistent with the record developed at trial. First, before the sale of the Buffalo Properties had even closed, Richard and Mary Louie executed grant deeds transferring ownership of the Buffalo Properties to Rick

ORDER FOLLOWING TRIAL
-12-

Louie and Stephanie Chan. Second, consistent with the previous transfer, all the documents relating to the sale of the Buffalo Properties to a third party in 2009 were executed by Rick Louie and Stephanie Chan only. Third, the check for $190,751, which was deposited in the Merrill Lynch Account, was made payable to Rick Louie. Fourth, the court finds that the Merrill Lynch Account was controlled, managed, and used by Rick Louie and Stephanie Chan, with minimal involvement by Mary Louie. From this, the court concludes that whatever interest Mary Louie had in the Buffalo Properties was terminated sometime between 2003 (when she executed the first deed) to 2009, when Rick Louie took the proceeds from the sale.

### B.  The "Badges of Fraud" Show Actual Intent to Defraud

The circumstances of this case demonstrate the intent to defraud. In 2009, Rick Louie and Stephanie Chan knew that the 580 Parkson Road Property investment was in trouble. The property as foreclosed in early 2010, and they were immediately sued for a large deficiency. Near this time, Rick Louie negotiated for the purchase of the Tehama note. To keep that investment clear of his creditors, he had Homer Ventures, LLC purchase the note, using funds taken from the Merrill Lynch Account. Homer Ventures, LLC gave no promise to repay that sum. When it came time to foreclose, Rick Louie had title placed in Mary Louie's name.

In summary, Rick Louie had an interest in the Merrill Lynch Account, there was a transfer of the funds from the Merrill Lynch as established through summary adjudication earlier, the transfer was made with actual intent to defraud creditors, and the transfer was made in October 2009, within two years of the bankruptcy filing of Rick Louie and Stephanie Chan on May 5, 2011. The timing, the use of related entities, and the transparent attempt to keep his name off the property all show fraudulent intent.

C. The Facts Support a Conclusion of Constructive Fraudulent Conveyance

The court also finds that the Plaintiff has satisfied her burden on proving constructive fraudulent conveyance.[9] As indicated above, the court has already established certain elements for a claim of constructive fraudulent conveyance through summary adjudication. They established that: (1) there was a transfer; (2) Rick Louie was insolvent, or became insolvent, as a result of the transfer; (3) Rick Louie failed to receive a reasonably equivalent value in exchange for the transfer; and (4) for the purpose of § 544(b) and Cal.Civ.Code §§ 3439.04 and 3439.05, there exists an actual creditor who held the right to avoid the transfer as of the date of Rick Louie's bankruptcy petition.

Defendant made an alternative argument that, should the court conclude either Homer Ventures or Rick Louie owns the Tehama Property, then Rick Louie committed fraud in converting Mary Louie's funds and the estates holds the Tehama Property in trust for the benefit of Mary Louie. This argument has no merit. Under California law, a constructive trust may be imposed on property as a remedy for things wrongfully detained or obtained by fraud. Cal.Civ.Code §§ 2223 and 2224. Defendant—a New Mexico company—has no right to seek the imposition of a constructive trust on Mary's behalf. Assuming there is a right to a constructive trust that argument and any entitlement belong to Mary Louie, not Defendant. *See In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D.Cal. 1994)(only the equitable owner of the trust res may obtain a constructive trust).

D. True Traditions, L.C. is Required to Turn Over the Tehama Property under § 550 because it is a Mediate Transferee and was not a Bona Fide Purchaser

Section 550(a) permits the trustee to recover, for the benefit of the estate, "the property transferred, or, if the court so orders, the value of such property" from the transferee. 11 U.S.C. § 550(a). The Trustee seeks recovery of ownership of the Tehama Property. It is permissible

---

[9] Plaintiff Green sought, prior to trial, to amend her complaint to include a cause of action for constructive fraud. The court denies that request. The fraudulent conveyance at issue here came from the individual bankruptcy estate of Rick Louie and Stephanie Chan. Because the trustees have already agreed to a resolution of their respective rights to any recovery, it is not necessary to amend the complaint Ms. Green filed.

ORDER FOLLOWING TRIAL

-14-

under § 550(a) to recover the actual property transferred. The statute permits the trustee to recover from the initial transferee or the entity for whose benefit the transfer was made or subsequent transferees. 11 U.S.C. § 550(a)(1) and (2). Recovery from subsequent transferees is limited by the good faith or bona fide purchaser exception of § 550(b).

The funds in the Merrill Lynch Account were initially transferred to Homer Ventures, LLC and then Mary Louie, in the context of the purchase of the Tehama note and the subsequent acquisition of the Tehama Property. Mary Louie transferred the Tehama Property to Defendant less than two weeks after the trial on the § 727 action against Rick Louie but before the court rendered its decision. The summary adjudication order established that Defendant is not a "good faith transferee" as the term is used in § 550(b)(2). Defendant concedes in the trial brief that it did not give any consideration for the transfer of the Tehama Property. Accordingly, Plaintiff is entitled to recover the Tehama Property from Defendant for the benefit of the estate.

### E. Plaintiff is Entitled to Declaratory Relief

In federal court, Congress has provided for declaratory relief actions as set forth in 28 U.S.C. §§ 2201 and 2202. Declaratory relief actions are applicable to bankruptcy cases pursuant to Bankruptcy Rule 7001(9). The granting of declaratory relief rests in the sound discretion of the court exercised in the public interest. *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1299 (9th Cir. 1992). "The guiding principles are whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." *Id.*, at 1299. A declaratory judgment may be the basis of further relief against the adverse party. *Public Service Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 245 (1952).

In this case, Plaintiff requests declaratory relief as to ownership of the Tehama Property. It is undisputed that the requirement of the existence of an actual case in controversy has been met. *See* 28 U.S.C. § 2201(a); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941) (a case in controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of

ORDER FOLLOWING TRIAL

-15-

sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). Having made the findings set out above, the court exercises its discretion to hold that title to the Tehama Property should be vested in the name of Carol Wu, trustee.

## IV. CONCLUSION

For the reasons stated above, the court finds that the Tehama Property should be returned to the estate of Rick Louie and Stephanie Chan. The court will enter a judgment in favor of Plaintiff, directing that title the property be reformed and put in the name of the chapter 7 estate of Rick Louie and Stephanie Chan, for administration and distribution in accordance with the agreement between the trustees.

Plaintiff shall submit an order consistent with this decision.

**IT IS SO ORDERED.**

**\*\*\* END OF ORDER \*\*\***

ORDER FOLLOWING TRIAL

-16-

**COURT SERVICE LIST**

**[ECF Recipients Only]**

ORDER FOLLOWING TRIAL

-17-